**UNITED STATES COURT OF APPEALS**   **Filed 1/6/97**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

**Patrick J.  Fisher, Jr.**                                                                  **Elisabeth A.**
**Shumaker**
**Clerk**                                                                                        **Chief Deputy Clerk**

January 6, 1997


**TO:**   All recipients of the captioned opinion

**RE:**   No. 95-9551, <u>Luna-Rodriguez v. Immigration & Naturalization Service</u>
          January 3, 1997


        Please be advised of the following correction to the captioned decision:

The last line of the opinion contains the phrase "if AFFIRMED."  It should read
"is AFFIRMED."

        Please make the appropriate correction.

                                        Very truly yours,

                                        Patrick Fisher, Clerk



                                        Susan Tidwell
                                        Deputy Clerk

UNITED STATES COURT OF APPEALS

**Filed 1/3/97**

TENTH CIRCUIT

RAUL LUNA-RODRIGUEZ,
SOSTENES LUNA-SALGADO,

Petitioners,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

Respondent.

No. 95-9551

ON PETITIONS FOR REVIEW FROM THE
BOARD OF IMMIGRATION APPEALS
(BIA Nos. A73 372 973 and A73 372 974)

Submitted on the briefs:

Anthony J. Garcia, for Petitioners.

Joan E. Smiley, Senior Litigation Counsel, Madeline Henley, Office of
Immigration Litigation, Civil Division, Department of Justice, Washington, D.C.,
for Respondent.

Before EBEL and HENRY, Circuit Judges, and DOWNES,[*] District Judge.

---

[*] Honorable William F. Downes, District Judge, United States District
Court for the District of Wyoming, sitting by designation.

EBEL, Circuit Judge.

Petitioners Raul Luna-Rodriguez and Sostenes Luna-Salgado, husband and wife, are natives and citizens of Mexico who entered the United States without inspection in 1986. See 8 U.S.C. § 1251(a)(1)(B). They petition for review of a final order of deportation by the Board of Immigration Appeals (Board). We have jurisdiction under 8 U.S.C. § 1105a(a). We affirm the Board's decision, and deny the petition for review.[2]

The Lunas applied for and were denied relief under § 244 of the Immigration and Nationality Act, which gives the Attorney General discretion to suspend deportation and admit for permanent residence an alien who: (1) has been physically present in the United States for at least seven years; (2) is a person of good moral character; and (3) is "a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1254(a)(1). Even if these statutory prerequisites are satisfied, the Attorney General retains discretion to

---

[2] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

suspend, or refuse to suspend, deportation.  INS v. Rios-Pineda, 471 U.S. 444, 446 (1985).  The immigration judge (IJ) denied suspension of deportation in this case because the Lunas failed to demonstrate seven years' continuous physical presence in the United States, or that they would suffer extreme hardship if deported.  Admin. R. at 35-36.

On appeal, the Board affirmed the IJ's decision, determining on its own reasoning that the Lunas failed to show they would suffer extreme hardship if deported.  Id. at 2-4.  The Board noted that, at the time of its decision, Mr. and Mrs. Luna were 36 and 39 years old, respectively.  Mr. Luna had worked for several years as a mason, and Mrs. Luna was a child care provider.  Both had several close relatives in Mexico.  They also had a few relatives residing in the United States, but none that qualified under § 1254(a)(1).[3]  As a result, the Lunas were required to demonstrate extreme hardship through themselves alone to establish their eligibility for suspension of deportation.  Mr. and Mrs. Luna both claimed they would be unable to find work in Mexico.  The Board found that the Lunas' "residence in this country is not so lengthy nor their family ties so extensive that their deportation would amount to extreme hardship."  Admin. R. at

---

[3]     At the time of the Board's decision, the Lunas' only child, a daughter, was married and living here, but she was neither a citizen nor a lawful permanent resident.  Their permanent resident son-in-law and United States citizen granddaughter do not come within the language of § 1254(a)(1), which is construed strictly.  INS v. Hector, 479 U.S. 85, 88-90 (1986).

4. The Board further found "that these middle-aged, employable respondents, who are in good health and have no one depending upon them for support, have not shown that the economic and emotional difficulties that they would experience upon deportation can be characterized as extreme hardship." Id. The Board concluded that the Lunas were not eligible for suspension of deportation under § 1254(a)(1) because they had failed to establish extreme hardship, and that it was therefore unnecessary to determine whether the Lunas had shown seven years' continuous physical presence in the United States.

In this petition for review, the Lunas argue that: (1) the Board abused its discretion by failing to consider all of the factors relevant to the determination of extreme hardship; (2) the IJ abused his discretion when he found that they had failed to show seven years' continuous physical presence in the United States; and (3) the IJ distorted or disregarded important aspects of their claim, resulting in an arbitrary denial of relief. Because the Board reviewed the case de novo, we review only the Board's decision and not that of the IJ. Rubio-Rubio v. INS, 23 F.3d 273, 274 n.1 (10th Cir. 1994); cf. Panrit v. INS, 19 F.3d 544, 546 (10th Cir. 1994) (holding that when Board relies on express reasoning of IJ, court of appeals reviews only that reasoning). As a result, we do not reach the Lunas' second or third issues.

We review the Board's determination that the Lunas failed to establish extreme hardship only for abuse of discretion. Turri v. INS, 997 F.2d 1306, 1308 (10th Cir. 1993). The words "extreme hardship . . . are not self-explanatory, and reasonable men could easily differ as to their construction. But the Act commits their definition in the first instance to the Attorney General and [her] delegates." INS v. Wang, 450 U.S. 139, 144 (1981) (per curiam). Several nonexclusive factors are relevant to the determination of extreme hardship: "the alien's age; the length of his residence in the United States; his family ties in the United States and abroad; his health; the economic and political conditions in the country to which he may be returned; his financial status, business, or occupation; the possibility of other means of adjustment of status; his immigration history; and his position in the community." Matter of Ige, Int. Dec. 3230, 1994 WL 520996, at 3 (BIA Sept. 16, 1994). These factors must be considered in the aggregate. Id. "'[W]e may . . . scrutinize the [Board's] decision for procedural regularity,'" Turri, 997 F.2d at 1308 (quoting Hernandez-Cordero v. United States INS, 819 F.2d 558, 563 (5th Cir. 1987)), but our substantive review of a no "extreme hardship" determination would allow us to find an abuse of discretion only in a case "where the hardship is uniquely extreme, at or closely approaching the outer limits of the most severe hardship the alien could suffer and so severe that any

reasonable person would necessarily conclude that the hardship is extreme," Hernandez-Cordero, 819 F.2d at 562-63.

The Lunas do not point out what specific factor the Board supposedly overlooked. The crux of their argument, rather, is that they will be completely unable to find work in Mexico and that this, by itself, demonstrates extreme hardship. We note that this allegation is not supported by any evidence. See, e.g., Ramirez-Gonzalez v. INS, 695 F.2d 1208, 1211-12 (9th Cir. 1983) (holding unsupported allegations insufficient to establish inability to find employment if deported or to trigger Board's duty to consider personal hardships resulting from unemployment); Santana-Figueroa v. INS, 644 F.2d 1354, 1357 & n.8 (9th Cir. 1981) (holding alien seeking suspension of deportation must offer more than "bare allegation" of extreme hardship); Pelaez v. INS, 513 F.2d 303, 304-05 & n.1 (5th Cir. 1975) (rejecting unsupported claim that petitioner would be unable to find suitable work if deported). Therefore, we find their argument to be without merit.

Moreover, the inability to find work, without more, does not establish that the Board abused its discretion in finding no "extreme hardship." "[I]t is only when other factors such as advanced age, severe illness, family ties, etc. combine with economic detriment to make deportation extremely hard on the alien or the citizen or permanent resident members of his family that Congress has authorized

suspension of the deportation order." Matter of Anderson, 16 I. & N. Dec. 596, 598 (BIA 1978). That is not the case here.

A narrow interpretation of "extreme hardship" is consistent with the structure and legislative history of the statute. See Hernandez-Patino v. INS, 831 F.2d 750, 752-53 (7th Cir. 1987); Hernandez-Cordero, 819 F.2d at 562. Although Congress supplied the suspension remedy for aliens who enter this country illegally, the eligibility requirements themselves, and the nearly "'unfettered' discretion" accorded the Attorney General to deny suspension even when they are met, see id. (quoting Jay v. Boyd, 351 U.S. 345, 354 (1956)), indicate that Congress intended this dispensation rarely to be bestowed. The Supreme Court has previously upheld the Board's narrow interpretation of "extreme hardship," because "a narrow interpretation is consistent with the 'extreme hardship' language, which itself indicates the exceptional nature of the suspension remedy." Wang, 450 U.S. at 145.

The decision of the Board of Immigration Appeals is AFFIRMED, and the petition for review is DENIED.